United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 1, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-50310

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GUS PETER GRAMMAS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before EMILIO M. GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Upon reconsideration, we withdraw our previous opinion, reported at __ F.3d

__, and substitute the following:

Gus Peter Grammas ("Grammas") appeals the district court's denial of his 28

U.S.C. § 2255 motion, arguing that his counsel's performance regarding whether to

stand trial or plead guilty was constitutionally deficient.  Though we hold that

Grammas was provided ineffective assistance of counsel, we remand to the district court for a hearing in order to determine whether that deficiency prejudiced Grammas.

## I. FACTS AND PROCEEDINGS

On March 16, 2001, Grammas was convicted of: (1) knowingly altering a Vehicle Identification Number, in violation of 18 U.S.C. § 511(a)(1); and (2) possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Grammas's trial counsel, Buck Harris ("Harris"), failed to realize (and consequently failed to notify Grammas) that his prior convictions were crimes of violence. The Government's indictment states that one of Grammas's prior offenses was for burglary of a building. Previously, Grammas had been convicted of burglary of a habitation—a crime of violence—which raised his base offense level. Harris failed to confirm that the prior conviction related to a burglary of a building, and admitted post-conviction that "the defense did rely on that original contention that this was a burglary of a building." The indictment also alleges a prior felony conviction for escape.

Harris argued to the district court his mistaken belief that the firearms offense should carry a base offense level of 8, not 20. The relevant section of the Sentencing Guidelines (§ 2K2.1) does not even contain a base offense level of 8. See U.S. SENTENCING GUIDELINES MANUAL § 2K2.1 (2001). Harris admitted to having used the wrong section of the Guidelines, and Harris (mis)informed Grammas that he faced only 6 to 12 months if convicted. Grammas was sentenced using a base offense level of 21 (20 from Guidelines § 2K2.1, plus 1 from a prior conviction involving aiding illegal

2

aliens), resulting in a Guidelines range of 70 to 87 months, and a sentence of 70 months in prison.

After exhausting his direct appeals,[1] Grammas filed this § 2255 motion alleging ineffective assistance of counsel.  See 28 U.S.C. § 2255.[2]  The district court denied the § 2255 motion; this Court granted a certificate of appealability "on the issue whether [Grammas] received the effective assistance of counsel relative to his decision to stand trial rather than plead guilty."  This appeal follows.

## II.  STANDARD OF REVIEW

This Court "review[s] a district court's conclusions with regard to a petitioner's § 2255 claim of ineffective assistance of counsel de novo."  United States v. Conley, 349 F.3d 837, 839 (5th Cir. 2003) (citing  United States v. Bass, 310 F.3d 321, 325 (5th Cir.2002); United States v. Faubion, 19 F.3d 226, 228 (5th Cir.1994)).

## III.  DISCUSSION

A.      Section 2255 relief from federal custody

Section 2255 "provides the federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate judgment and sentence in his trial

---

[1] This Court reversed the district court's restitution order, but otherwise affirmed its holdings.  United States v. Grammas, No. 01-50730, 37 Fed. Appx. 88, 2002 WL 971617, at *1 (5th Cir. May 2, 2002).

[2] This Court generally declines to review ineffective assistance of counsel claims on direct appeal. United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995).  Ineffective assistance of counsel claims are more appropriately brought in a 28 U.S.C. § 2255 motion.  United States v. Gordon, 346 F.3d 135, 136 (5th Cir. 2003).

court." Kuhn v. United States, 432 F.2d 82, 83 (5th Cir. 1970). The statute establishes that a prisoner in custody under a sentence of a court established by Congress "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Where there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. (emphases added).

B.    Ineffective assistance of counsel under Strickland

To prevail on an ineffective assistance of counsel claim, Grammas must satisfy the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, Grammas must demonstrate that counsel's performance fell below an objective standard of reasonableness. Id. "We have described that standard as requiring that counsel 'research relevant facts and law, or make an informed decision that certain avenues will not be fruitful.'" Conley, 349 F.3d at 841 (citations omitted). Second, Grammas must prove that he was prejudiced by counsel's substandard performance. "[T]o prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the Strickland test." Conley, 349 F.3d at 842 (citing and quoting Glover v. United States, 531 U.S. 198, 203 (2001), and United States v. Franks, 230 F.3d 811, 815 (5th Cir. 2000) (finding prejudice where defendant was sentenced

4

under Guidelines range of 70 to 87 months instead of the proper 57 to 71 months range)).

Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty."  Reed v. United States, 354 F.2d 227, 229 (5th Cir. 1965).

(1)	Harris's performance fell below an objective level of reasonableness.

"Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland.  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court."  Teague v. Scott, 60 F.3d 1167, 1171 (5th Cir. 1995).  "'By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.'"  United States v. Ridgeway, 321 F.3d 512, 514 (5th Cir. 2003) (alterations in original) (citing and quoting United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998)).  Grammas contends that he was denied his constitutional right to effective counsel relative to his decision to stand trial rather than plead guilty.  He argues that Harris's performance was deficient because, among other things, Harris was unfamiliar with the Sentencing Guidelines and substantially misstated Grammas's exposure if he were to be found guilty at trial.

Harris conceded these mistakes. Regarding the prior convictions, the Government's indictment states that one of Grammas's prior offenses was for burglary of a building.  In reality, Grammas had been previously convicted of burglary of a habitation—a crime of

5

violence—which raised his base offense level. Harris failed to confirm that the prior conviction related to a burglary of a building, admitting that "the defense did rely on that original contention that this was a burglary of a building." Even the most basic research on Grammas's background would have revealed that the prior burglary was a burglary of a habitation. The indictment also alleges a prior felony conviction for escape. This Court decided nearly two years before Grammas's trial that an escape constitutes a crime of violence. United States v. Ruiz, 180 F.3d 675, 676-77 (5th Cir. 1999). Had Harris realized that either one of Grammas's prior convictions was a crime of violence, Harris would have known that the base offense level would be significantly higher. Harris's mistaken belief that Grammas's prior convictions were not crimes of violence, Harris conceded, "may even have gone to affect whether or not we negotiated any type of plea agreement or settlement agreement considering the greater exposure."

Harris further demonstrated a complete lack of familiarity with the Guidelines. He admits that he used the incorrect section of the Guidelines, and his argument for a base offense level of 8 illustrates this lack of understanding. Sentencing Guidelines § 2K2.1—the section under which Grammas was sentenced—does not even contain a base offense level of 8. See U.S. SENTENCING GUIDELINES MANUAL § 2K2.1 (2001). Harris, based on his misunderstanding of the Guidelines, advised Grammas that he would, at most, be imprisoned for 6 to 12 months if he were to be convicted.[3] Harris's assistance fell well

---

[3] The Government's non-responsive and off-topic brief does not contest Grammas's claim that Harris told him his exposure would be 6 to 12 months. Arguments not made in the briefs are waived. See, e.g., Hobbs v. Hawkins, 968 F.2d

6

below the objective standard of reasonableness required by Strickland.

(2)     Whether Grammas was prejudiced by Harris's deficient performance.

The only remaining issue is whether Grammas was prejudiced by Harris's deficient performance. Grammas's conviction occurred after a unanimous Supreme Court in Glover rejected the Seventh Circuit's rule that "a minimal amount of additional time in prison cannot constitute prejudice." Glover, 531 U.S. at 203. The Supreme Court noted that, "[q]uite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." Id. (emphasis added). In a recent case this Court analyzed the prejudice prong by considering whether the petitioner could "demonstrate a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence." Ridgeway, 321 F.3d at 515 (quoting Daniel v. Cockrell, 283 F.3d 697, 706 (5th Cir. 2002)). However, we noted in Ridgeway that Glover "arguably casts doubt on the 'significantly less harsh test,'" Ridgeway, 321 F.3d at 515 n.2 (quotations and citations omitted), and implied that the "significantly less harsh test" only applied in Ridgeway because Glover does not apply retroactively. Ridgeway, 321 F.3d at 515 n.2. We hold that Glover abrogates the significantly less harsh test, and that any additional time in prison has constitutional significance.[4] Accord Conley, 349 F.3d at 842 (noting that "of

471, 474 n.2 (5th Cir. 1992).

[4] We pause here to recognize the distinction between the federal guidelines and state sentencing regimes. State sentencing regimes tend to be more discretionary than the lock-step and predictable federal system. Due to the volatile nature of state regimes, "practically any error committed by counsel could [result] in a harsher sentence." Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993). Thus, we emphasize that

course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the Strickland test") (citing and quoting Glover, 531 U.S. at 203, and Franks, 230 F.3d at 815 (finding prejudice where, as here, defendant was sentenced under Guidelines range of 70 to 87 months instead of the proper range of 57 to 71 months)).

Because Grammas was convicted after Glover was decided, Glover applies to Grammas's case. Whether there was a reasonable probability that, but for Harris's actions, Grammas would have received a lesser sentence than he did turns on first, whether Grammas would have pleaded guilty if he knew of the true criminal penalty he faced, and second, whether a guilty plea would have indeed reduced Grammas's sentence. As for the first question, Grammas argues that he suffered prejudice because Harris's assessment that Grammas only would face 6 to 12 months imprisonment grossly underestimated Grammas's 70-month sentence. Had he known about his greater sentencing exposure, Grammas maintains, he would have been far more likely to plead guilty (and thereby avail himself of the Guidelines § 3E1.1 reduction for acceptance of responsibility) rather than to proceed to trial. See U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (2001). While it seems intuitive that a defendant's ignorance of his potential maximum sentence would affect his decision whether to enter a plea, we recognize that it is at least plausible that a defendant's ignorance could be immaterial to such a decision. For instance, Grammas explains in his

---

our adoption of the Glover "any amount of jail time" test only applies to cases involving the federal guidelines. See Daniel v. Cockrell, 283 F.3d 697, 706-07 fns. 16 & 17.

brief that he went to trial in part because Harris advised him that he would be acquitted on one of the counts of the indictment. Whether it is reasonably probable that Grammas's decision to plead guilty would have been different had he been properly counseled as to his potential punishment is a question of fact. Such a determination should be left to the district court. See 28 U.S.C. § 2255.

Second, even if Grammas had decided to plead guilty, it is unclear whether he would have received a lesser sentence. Had Grammas pleaded guilty and qualified for a three-point reduction under Guidelines § 3E1.1(b), he would have had his sentence reduced by at least 7 and up to 19 months; similarly, had Grammas received a 2-point reduction under Guidelines § 3E1.1.(a), he would have been eligible for a 13-month shorter sentence (the court sentenced Grammas at the bottom of the Guidelines range). See U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (2001). On the other hand, Grammas's sentence would not have decreased if he received the 2-point reduction and were then sentenced to the maximum sentence in that range (i.e., 71-months). Further, it is possible that, even had Grammas pleaded guilty, he may not have qualified for the reduction of sentence under the Guidelines. See id. at n.3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). This question, like the last, requires further proceedings in front of the district court to determine its answer.[5]

_____

[5] The acceptance of responsibility reduction requires that the defendant not challenge his conviction. See U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof . . . and only [after conviction] admits guilt and remorse."). Had Grammas pleaded guilty, he would not have gone to trial. Should the district court

9

This Court has long recognized that to show prejudice, a defendant "must demonstrate a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence." United States v. Ridgeway, 321 F.3d 512, 515 (5th Cir. 2003) (E. M. Garza, J.) (discussing potential prejudice resulting from counsel's alleged failure to inform the defendant of his sentencing exposure if he proceeded to trial instead of pleading guilty, but finding no prejudice because the 120-month sentence the defendant might have received had he pleaded guilty was not "significantly less harsh" than the 121-month sentence he received after being found guilty at trial). Our holding today recognizes that the Supreme Court's decision in Glover v. United States, 531 U.S. 198, 203 (2001) (noting that "any amount of jail time has Sixth Amendment significance"), abrogates our "significantly less harsh" test and replaces it with the "any amount of jail time" test. See supra.

## IV. CONCLUSION

Grammas demonstrates that Harris provided ineffective assistance of counsel in violation of the Sixth Amendment. Further proceedings are needed, however, to determine whether Harris's ineffectiveness actually prejudiced Grammas. In particular, the district court should determine whether it was reasonably probable that (1) Harris's deficient performance affected Grammas's decision whether to plead guilty, and (2) if

---

find that Grammas would have pleaded guilty, Grammas should not then be deprived the reduction on the sole ground that he actually went to trial. Similarly, because Grammas proceeded in forma pauperis and had the benefit of counsel at the initial trial, he should not be denied that assistance at the evidentiary hearing.

10

Grammas had pleaded guilty, whether he would have received a reduction in sentence under the federal guidelines. Therefore, this case is REMANDED for an evidentiary hearing and, if necessary, resentencing consistent with this opinion.

EMILIO M. GARZA, Circuit Judge, concurring in the judgment:

Because I do not agree with a significant part of the majority's analysis, *see United States v. Grammas*, ___ F.3d ___, 2004 WL 1146382 (5th Cir. May 21, 2004) (Emilio M. Garza, J., dissenting), I concur in the judgment only.