COOKS, J.,
dissenting.
|,The majority disposes of Defendant’s writ application by finding it wan not timely filed. The timeliness of the present application for post-conviction relief was discussed at the evidentiary hearing. It was not disputed that the application for post-conviction relief was filed more than two years after Defendant’s conviction and sentence became final. However, the trial court found the application was timely filed pursuant to La.Code Crim.P. art. 930(8)(A)(1), which provides an exception to the two-year time limitation if “[t]he application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his attorney.” The trial court found the exception applicable in this case, and I find no error in that conclusion.
The majority finds the exception does not apply because “defendant’s complaint *1243 involves dissatisfaction with what may be the result of his immigration problems and not his lack of knowledge of the relationship between his immigration status and his criminal record at the time of his plea.” I cannot agree with this interpretation and find the record amply supports Defendant’s contention that he was wholly unaware of the effect his guilty plea would have on his immigration status at the time of the plea. There was no error in the trial court’s conclusion that the application for post-conviction relief is timely.
| gDefendant seeks to withdraw his guilty plea because he was never informed by his defense counsel or the State that the plea could result in any consequence to his immigration status. In this case, because of the conviction, he is now subject to automatic deportation. Defendant has a family he lives with in Louisiana.
When Defendant realized he was subject to automatic deportation as a result of his guilty plea, he immediately filed an application for post-conviction relief with the trial court. In it, he asserted that his Sixth Amendment rights had been violated because his attorney failed to advise him that pleading guilty plea would affect his immigration status in the United States. An evidentiary hearing was held.
At the evidentiary hearing, the State and trial court both agreed with Defendant that based on Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), Defendant’s court appointed counsel was ineffective by failing to advise him of the consequences the guilty plea would have on his immigration status. The facts of Padilla are similar to the facts in this case in that the conviction was for unlawful drugs and involved the defendant’s acceptance of a guilty plea which subjected him to automatic deportation.[1] Despite its finding that defense counsel was ineffective, the trial court still rejected Defendant’s post-conviction relief application, finding Defendant failed to meet the second prong of the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) — that he was prejudiced by the ineffective assistance of counsel.
At the evidentiary hearing, Defendant testified that, despite numerous prior attempts to meet with his court appointed attorney, he only met with him once, just for five minutes prior to the guilty plea hearing. He acknowledged the reason he accepted the plea was that it involved no jail time. But he reiterated had he known | she was subject to deportation because of the guilty plea he would have “tr[ied] to get more time from the court and tr[ied] to get me a better lawyer ... Try to go harder with the case.”
Padilla held that a criminal defense attorney is obligated to affirmatively and accurately advise a non-citizen client about the deportation consequences of a plea “when the deportation consequences are truly clear.” Id. at 1483. There seems little doubt in this case that the deportation consequences facing Defendant in this case were “truly clear,” and should have been communicated to Defendant.
Of particular interest is Marroquin v. United States, 480 Fed.Appx. 294 (5th Cir. 2012). In that case, the defendant pled guilty to one count of transporting an ille *1244 gal alien within the United States for financial gain in violation of federal law. Upon her release, the United States Immigration and Custom’s Enforcement took custody of the defendant for purposes of deportation. The defendant filed a writ alleging Padilla applied retroactively to her petition and her counsel therefore had a constitutional obligation to inform her regarding the potential deportation consequences of a guilty plea, and that her counsel failed to do so, constituting prejudice under Strickland. The district court agreed that Padilla applied retroactively to her case, but concluded she had not met her burden under Strickland. The United States Fifth Circuit Court of Appeal affirmed on the grounds that Padilla does not apply retroactively. The majority opinion did not address whether the defendant met her burden to show prejudice under Strickland. Judge Dennis authored a concurring opinion, agreeing with the majority’s finding that Padilla does not apply retroactively, but expressing his opinion on the prejudice issue. In part, Judge Dennis wrote:
“Defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process. During plea negotiations defendants are ‘entitled to the effective assistance of competent counsel.’ ” Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (citations omitted) (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)) Inciting Missouri v. Frye, - U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012); Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010)); Hill v. Lockhart, 474 U.S. 52, 54, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The right to effective representation during the plea process requires defense counsel to take adequate steps to “ ‘[p]reserv[e] [a non-citizen defendant’s] right to remain in the United States’ ” and “ ‘preserv[e] the possibility of discretionary relief from deportation.” Padilla, 130 S.Ct. at 1483 (quoting INS v. St. Cyr, 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)); see also id. at 1485 (“For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client’s plea.”). The familiar two-pronged ineffective assistance analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to alleged violations of this right. Padilla, 130 S.Ct. at 1482. Strickland’s prejudice prong “ask[s] whether ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Id. (quoting Strickland, 466 U.S. at 688, 694, 104 S.Ct. 2052).
In a series of decisions culminating in Padilla, Lafler and Frye, the Supreme Court has made clear that “plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process[ ] ... that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.” Frye, 132 S.Ct. at 1407. “Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is ‘[o]ne of the most precious applications of the Sixth Amendment.’ ” United States v. Rivas-Lopez, 678 F.3d 353, 356-57 (5th Cir. *1245 2012) (alteration in original) (quoting United States v. Grammas, 376 F.3d 433, 436 (5th Cir.2004)).
Marroquin, 480 Fed.Appx. at 297-98.
There was no dispute that Defendant in this case received ineffective assistance of counsel during the plea negotiations. The trial court in this matter agreed that counsel’s performance was deficient, but apparently believed Defendant’s plea was still effective because it was voluntarily given. Judge Dennis in his concurrence noted that the violation of a defendant’s right to effective representation by defense counsel during the plea bargaining process cannot “be erased by a trial court’s general and talismanic plea colloquy statement after the bargaining process is complete.” Id. at 298. He notes the United States Supreme Court in Missouri v. Frye, — U.S. -, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012) held the holding of a fair |5trial cannot “inoculate [a trial counsel’s] errors in the pre-trial process” from collateral attack under Strickland. Id. at 298. Judge Dennis finds that a trial judge’s plea colloquy warnings likewise cannot super-cede errors made by defense counsel during the plea bargaining process. In detail on this issue, Judge Dennis explained:
The Supreme Court has long contrasted the unique and critical obligations of defense counsel during the plea bargaining process with the far more limited role of the trial court to ensure a minimally valid guilty plea. “[CJounsel’s function as assistant to the defendant [gives rise to] the overarching duty to advocate the defendant’s cause and the more particular duties to consult with the defendant on important decisions” after “makfing] reasonable investigations.” Strickland, 466 U.S. at 688, 691, 104 S.Ct. 2052. Counsel has “the critical obligation ... to advise the client of ‘the advantages and disadvantages of a plea agreement.’ ” Padilla, 130 S.Ct. at 1484 (quoting Libretti v. United States, 516 U.S. 29, 50-51, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995)). Thus, the Padilla court stressed that “[i]t is quintessentially the obligation of counsel to provide her client with available advice about an issue like deportation.” Id. at 1484 (emphasis added).
Accordingly, the judicial plea colloquy is no remedy for counsel’s deficient performance in fulfilling these obligations. The colloquy merely “assistfs] the district judge in making the constitutionally required determination that a defendant’s guilty plea is truly voluntary.” McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Moreover, because a judge “cannot investigate the facts[ ] ... or participate in those necessary conferences between counsel and accused which sometimes partake of the inviolable character of the confessional,” a judge cannot “discharge the obligations of counsel for the accused.” Powell v. Alabama, 287 U.S. 45, 61, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Indeed, Rule 11 mandates that “the court must not participate in [plea] discussions.” Fed. R.Crim.P. 11(c)(1).
Id. at 298-99.
Judge Dennis further notes the conclusion that a trial court’s deportation warnings do not foreclose a showing of prejudice is confirmed by the Padilla Court’s own discussion of such warnings.” Id. at 299. Padilla specifically noted “the severity of deportation — ‘the equivalent of banishment or exile’ — only underscores how critical it is for counsel to inform her non-citizen client that he faces a risk of deportation.” Padilla, 130 S.Ct. at 1486.
*1246 IsAs set forth earlier there is nothing in the record to dispute that Defendant was never informed that he faced automatic deportation, or that the trial court informed him of this at the plea colloquy hearing. Defendant testified he would never have accepted the plea were he aware of the automatic deportation that it entailed.
The trial court in the present case focusing on the prejudice issue rests its finding solely on whether Defendant would be able to prove he was innocent of the charges at trial. However, this was not the appropriate inquiry. Whether or not Defendant could establish his innocence (and he candidly admitted he likely could not) is not dispositive of the deportation issue. Defendant in brief points out that “[wjhere drug offenses are concerned, federal immigration law specifically allows discretionary relief for crimes that do not require mandatory deportation.” Defendant maintains he could have had the opportunity to negotiate a plea for lesser and included offense, one which would not have resulted in automatic deportation. Defendant also maintains because he had no prior criminal history he may have been a candidate for pre-trial diversion as well. Judge Dennis noted the United States Supreme Court has repeatedly “recognized that ‘[preserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence.’ ” Marroquin, 480 Fed.Appx. at 300, (quoting Padilla, 130 S.Ct. at 1483) (quoting INS v. St. Cyr, 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)). This would seem particularly so in the instant case as Defendant has a family here in Louisiana.
In the present case, when Defendant was not advised of the consequences of his felony plea to attempted possession of a controlled dangerous substance, he was deprived of an opportunity to seek discretionary relief from automatic deportation. Defendant unequivocally maintained throughout these proceedings he would not have pled guilty had he known of the mandatory deportation |7consequences. He maintained he would have either sought a different plea bargain, sought the services of an immigration attorney, or proceeded to trial. Thus, I find Defendant met his burden of proving prejudice under Strickland. For these reasons, I respectfully dissent from the majority’s opinion and would grant Defendant’s writ.

. It should be noted the United States Supreme Court did not address the issue of whether the defendant was prejudiced by the defective performance of his counsel. The supreme court remanded to the lower court for a determination of the prejudice issue.